IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| Colson Group USA, LLC | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 26-01816 |
| | ) | |
| U.S. CUSTOMS AND BORDER PROTECTION; | ) | |
| RODNEY S. SCOTT, in his official capacity as | ) | |
| Commissioner of U.S. Customs and Border | ) | |
| Protection; and the United States of America, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

1.      Beginning in February 2025, through a series of Executive Orders, President Trump invoked the International Emergency Economic Powers Act ("IEEPA") as authority to impose new and substantial tariffs ("IEEPA Tariffs") on goods imported from almost every foreign country, including countries from which Plaintiff obtains its imports.

2.      Plaintiff, Colson Group USA, LLC ("Plaintiff"), is an importer of merchandise into the U.S. subject to the IEEPA Tariffs.

3.      Plaintiff has paid estimated duties pursuant to the IEEPA Tariffs ("IEEPA Duties") on goods that it has imported and continued to deposit IEEPA Duties on imported goods so long as the IEEPA Tariffs were in effect.

4.      These IEEPA Duty payments become final and binding upon the liquidation of the associated customs entries, unless this Court rules otherwise.

5.      On February 20, 2026, the Supreme Court held that IEEPA does not authorize the president to impose the IEEPA Tariffs. *See Learning Resources Inc. et al. v. Trump*, 607 U.S. ____ (2026), No. 24-1287, slip op. at 20 (affirming *V.O.S. Selections, Inc. v. Trump*, 772. F.Supp. 3d (Ct. Int'l Trade 2025), *aff'd*, 149 F.4th 1312 (Fed. Cir. 2025)).

6.    Defendants have continued to liquidate entries and collect IEEPA Duties after the Supreme Court has ruled the actions unlawful.

7.    This separate action is necessary because even though the IEEPA Tariffs and their underlying Executive Orders have been held unlawful by the Supreme Court, importers, including Plaintiff, have paid IEEPA Duties and are not guaranteed a refund for those unlawfully collected tariffs in the absence of judgment ordering judicial relief for the damages in their favor. *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, slip op. 25-154 (Ct. Int'l Trade Dec. 15, 2025).

8.    Accordingly, for the reasons set out in *Learning Resources*, for itself, Plaintiff seeks full refund from Defendants of all IEEPA Duties Plaintiff has already paid to the United States as a result of the Executive Orders challenged in this lawsuit. To the extent that Plaintiff's entries subject to IEEPA Duties liquidate during the pendency of this action, Plaintiff also seeks remedial relief in the form of reliquidation such that Plaintiff can receive a refund of all IEEPA Duties paid, with interest.

## PARTIES

9.    Plaintiff, Colson Group USA, LLC, is a U.S Company, located in Arkansas and organized in Delaware.

10.    Defendant U.S. Customs and Border Protection ("CBP") is an agency of the U.S. Department of Homeland Security headquartered in Washington, D.C. CBP is responsible for border security and enforcement of customs laws, including the collection of tariffs, duties, taxes, and fees on goods imported into the United States. CBP collected payments made by Plaintiff of IEEPA Duties.

11.    Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity.

12.    Defendant United States of America received the disputed IEEPA Duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13.    Defendants are referred to collectively in this complaint as "CBP" or "Defendants."

**JURISDICTION AND STANDING**

14. The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources,* slip op. at 5, n.1; *AGS Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, slip op. 25-154 (Ct. Int'l Trade Dec. 15, 2025). The Court has subject matter jurisdiction under 28 U.S.C. § 1581 because this action is commenced against an officer of the United States and arises out of an executive order providing for tariffs. 28 U.S.C. § 1581(i)(1)(B); *see Silfab Solar, Inc. v. United States*, 296 F. Supp. 3d 1296, 1299 (Ct Int'l Trade 2018). CBP has no authority to make decisions regarding the legality or constitutionality of the Executive Orders at issue. *AGS Automotive Solutions v. U.S. Customs and Border Protection*, Consol. Court No. 25-255, slip op. 25-154. Without protestable decisions being made by CBP under 19 U.S. Code § 1514, no protest challenge is available under 28 U.S.C. § 1581(a). Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1581(i).

15. The Court has the same powers as a United States District Court at law, in equity, and as conferred by statute. 28 U.S.C. § 1585. Under 28 U.S.C. § 1581, this Court may enter a money judgment against the United States and order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

16. Plaintiff has standing to bring this lawsuit as the importer of record for goods imported into the United States from countries subject to the unlawful IEEPA Tariffs as implemented and collected by CBP. It is "adversely affected or aggrieved by agency action" within the meaning of the Administrative Procedures Act because, as a result of the overturned Executive Orders addressed by this lawsuit, Plaintiff has paid IEEPA Duties to the United States and thus has suffered injury caused by those unlawful Executive Orders. 5 U.S.C. § 702; 28 U.S.C. § 2631(i).

17. Plaintiff faces imminent and irreparable harm because entries for which it paid IEEPA Duties are anticipated to liquidate imminently, and Plaintiff faces uncertainty as to whether Defendants will issue refunds of the IEEPA Duties as to its liquidated entries, notwithstanding the Defendants'

statements in other actions before this Court. *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection, et al.* Consol. Court No. 25-00255, slip op. 25-154 (December 15, 2025).

18.  A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). The Executive Orders that resulted in the collection of IEEPA Duties were published in the Federal Register on or after February 1, 2025. The instant action is filed within two years of the date that these Orders were issued and published, and also within two years in which Plaintiff first paid these IEEPA Duties.

### GENERAL PLEADINGS

**I.     President Trump Ordered a Series of Tariffs, Invoking IEEPA for His Authority.**

**A.  The IEEPA Duties**

19. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Canada, Mexico, and China. Each Executive Order was premised on IEEPA authorizing the tariffs, and claimed justification under IEEPA because of a purported national emergency.

20. Executive Order 14194, *Imposing Duties to Address the Situation at Our Southern Border*,[1] imposed an additional 25% tariff on the import of goods from Mexico.

21. Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, imposed an additional 25% tariff on the import of goods from Canada, subject to certain exceptions.[2]

22. Finally, Executive Order 14195, *Imposing Duties to Address the Synthetic Opioid Supply Chain in the People's Republic of China*, imposed an additional 10 percent tariff on the import of goods from China.

---

[1] Exec. Order No. 14194, *Imposing Duties to Address the Situation at Our Southern Border*, 90 Fed. Reg. 9177 (Feb. 7, 2025).
[2] Exec. Order No. 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9113 (Feb. 7, 2025).

23. Four days later, on February 5, 2025, President Trump issued Executive Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, addressing duty-free *de minimis* treatment under 19 U.S.C. § 1321 and the collection of IEEPA Duties.[3]

24. On March 3, 2025, Executive Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, raised the incremental tariffs on imports from China to 20%, justifying this increase by claiming that "the PRC has not taken adequate steps to alleviate the illicit drug crisis."[4]

25. On April 2, 2025, citing trade deficits with the United States' trading partners as its own national emergency, the President issued Executive Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[5] This Executive Order imposed a 10 percent baseline tariff on nearly all imports to the United States, effective April 5, 2025, and additional reciprocal tariffs on 57 countries, effective April 9. *Id.* at Annex 1. These higher country-specific tariffs ranged from 11% to 50%. *Id.*

26. On April 8, 2025, the President issued Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, responding to retaliatory tariffs from China by raising the reciprocal tariff rate by 50 percentage points, from 34% to 84%.[6]

27. The next day, on April 9, 2025, the President issued Executive Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, suspending the

---

[3] Exec. Order 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 5, 2025).
[4] Exec. Order 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11463 (Mar. 3, 2025).
[5] Exec. Order 14257, *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 2, 2025).
[6] Executive Order 14259, *Amendment to Reciprocal Tariffs and Updated Duties as Applied to Low-Value Imports from the People's Republic of China*, 90 Fed. Reg. 15509 (Apr. 8, 2025).

higher country-specific tariffs on all countries except for China, and once again raising the reciprocal tariff rate on China from 84% to 125%.[7] The additional 20% opioid trafficking tariff remained in place, resulting in a minimum 145% IEEPA tariff on most imports from China.

28. In implementing these Executive Orders ("Challenged Executive Orders"), the Defendant directed changes to the Harmonized Tariff Schedule of the United States, requiring that the goods subject to the challenged tariffs be entered under new additional tariff codes.

29. On April 14, 2025, several companies filed an action in this Court challenging the legality of these Executive Orders. *See V.O.S. Selections, et al. v. Donald J. Trump, et. al.,* No. 25-cv-00066 (Dkt. 2). This Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. *V.O.S. Selections, et al. v Donald J. Trump, et al.*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025). The Federal Circuit's decision was, in turn, affirmed by the Supreme Court on February 20, 2026. *Learning Resources Inc. et al. v. Trump*, 607 U.S. ____ (2026)

30. In the months since the *V.O.S. Selections* complaint was filed, the President has issued additional Executive Orders imposing additional tariffs and modifying others, repeatedly invoking IEEPA.

31. CBP continued to collect duties imposed by the Challenged Executive Orders while the *V.O.S. Selections* litigation and related litigation remained pending, and only just announced on February 22, 2026, that duties imposed under the Challenged Executive Orders "will no longer be collected for goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 a.m. eastern time on February 24, 2026." CBP Cargo Systems Messaging Service Message #67834313, *Ending Collection of International Emergency Economic Powers Act Duties* (Feb. 22, 2026).

32. On November 11, 2025, a U.S. importer of merchandise subject to IEEPA Duties filed an action in this Court challenging the legality of the Challenged Executive Orders. *AGS Company*

---

[7] Exec. Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15625 (Apr. 9, 2025).

*Automotive Solutions v. U.S. Customs and Border Protection*, No. 25-255 (Ct. Int'l Trade Filed Nov. 11, 2025), ECF No. 3. The instant action is comparable to the cases consolidated under Court No. 25-255.

33. On December 15, 2025, this Court denied AGS Company Automotive Solutions' motion for preliminary injunction, finding that plaintiffs are not at risk of experiencing irreparable harm as a result of liquidation because this Court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28. U.S.C. § 1581(i). *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consul. Court No. 25-255, slip op. 24-154 (Ct. Int'l Trade Dec. 15, 2025). In *AGS* and other cases involving IEEPA Duties, "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in *V.O.S..*" *Id.* at 8. As a result, now that the Supreme Court has held that the President lacked the authority to impose the challenged tariffs under IEEPA, Defendants are bound by their agreement to not oppose the relief requested in this Complaint.

34. On December 23, 2025, this Court issued a stay for all cases unassigned as of the date of Administrative Order 25-02 and of all new cases involving claims arising from and seeking relief from IEEPA Duties. *In Re: Procedures for Entering a Stay in New IEEPA Tariff Cases*, Administrative Order 25-02 (Ct. Int'l Trade Dec. 23, 2025). Following the final, unappealable decision in *V.O.S. Selections*, this court stated that it "expects to determine the appropriate next steps for resolution of the New IEEPA Tariff Cases." *Id.*

35. On February 20, 2026, the Supreme Court issued a decision in which it held that IEEPA does not authorize the President to impose tariffs. *Learning Resources, Inc. v. Trump*, 607 U.S. ___, slip. op. at 20 ("[T]he terms of IEEPA do not authorize tariffs").

36. Following the Supreme Court's decision, on February 24, 2026, the plaintiffs in *V.O.S. Selections* moved the Federal Circuit to immediately issue its mandate so that this Court can initiate the appropriate remand proceedings to facilitate the "prompt and equitable disposition of both [*V.O.S. Selections*] and the over 900 other suits challenging the tariffs that are currently pending" before

this Court. *V.O.S. Selections, et al. v. Donald J. Trump, et. al.,* No. 25-1812 (Fed. Cir.) (Doc. 169).

37. CBP continues to liquidate entries and finalize the collection of the IEEPA Duties notwithstanding the fact that the Supreme Court determined that such tariffs are unlawful.

38. The President has provided no direction as to the refunding of the IEEPA Duties.

39. As the Supreme Court has made a final, unappealable decision in *Learning Resources*, this Court should lift the stay in Administrative Order 25-02 and require Defendants to issue the refunds of IEEPA Duties, with interest. *See V.O.S. Selections, et al. v. Donald J. Trump, et. al.,* No. 23-cv-00066 (Dkt. 72).

40. By this complaint, Plaintiff seeks relief as a result of all duties they have paid or will pay to the United States arising from the Challenged Executive Orders.

### B. CBP's Implementation of the Unlawful IEEPA Tariffs

41. CBP is charged with the assessment and collection of duties, including the IEEPA Duties. *See* 19 U.S.C. §§ 1500, 1502.

42. In 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, which adopted the new tariff nomenclature: the Harmonized Tariff System of the United States ("HTSUS"). Pub. L. No. 100-418, 102 Stat. 1107 (1988). CBP classifies merchandise imported into the United States according to the HTSUS, which sets out the tariff rates and statistical categories using a series of chapters, headings, and subheadings. 19 U.S.C. § 1202. The primary headings of the HTSUS describe broad categories of merchandise, while its subheadings provide a particularized division of the goods within each category. *Id.*

43. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

44. The United States International Trade Commission publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006; *see also Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 10010, 637 F. Supp. 2d 1218, 1225 (2009) ("The authority to modify the HTSUS lies with the President");  *Maple Leaf Mktg., Inc. v. United States*, 528 F. Supp. 3d 1365, 1378-79 (Ct. Int'l Trade 2021).

45. When goods enter the United States, CBP is responsible for assessing and collecting all duties, tariffs, taxes, and fees on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. 19 U.S.C. §§ 1202, 1500, 1502. CBP has effectuated the collection of IEEPA Duties, as communicated, through its Cargo Systems Messaging Service.

### C.  Liquidation

46. "'Liquidation' means the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1.

47. Typically, when goods enter (*i.e.*, are imported into) the United States, the importer of record pays an estimate of the duties, taxes, and fees ("duty") owed on the entry based on its customs declaration, which asserts a value, origin, and HTSUS classification for the imported goods. *See* 19 U.S.C. § 1484. CBP then reviews the customs declaration and may inspect the goods.

48. CBP then fixes the final appraisement of merchandise by confirming the final value, classification, duty rate, and final amount of duty for the imported goods. *See* 19 U.S.C. § 1500.

49. Once the final amount of duty is determined by CBP, CBP liquidates the entry and notifies the importer of record as to whether they owe more money or are entitled to a refund. *See* 19 U.S.C. § 1504(b).

50. Liquidation of an entry must occur within one year, unless such liquidation is extended. *See* 19 U.S.C. § 1504(a). Typically, liquidation occurs automatically by operation of law. *See* 19 C.F.R. § 159.11. In practice, CBP normally liquidates entries within 314 days after the date of entry of the goods and will usually post a notice on its website.

51. CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504 (b)(2); 19 C.F.R. § 159.12(a)(1)(ii).

52. Once liquidation has occurred, and if the liquidation is protestable, an importer of record has 180 days to file a protest contesting the liquidation, asking CBP to "reliquidate" the entry. *See* 19 U.S.C. § 1514. CBP can also voluntarily reliquidate entries within 90 days of the liquidation. 19 US.C. § 1501. However, not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.; see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024). A protestable liquidation under § 1514(a) requires CBP to have engaged in some sort of decision-making process.

53. This Court possesses the equitable authority to suspend liquidation. *E.g., In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

54. This Court and the Federal Circuit have cautioned that an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful, and that the CBP decision to liquidate entries with the collection of the IEEPA Duties may not be a protestable event. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66; *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

55. In the nearly-identical action, *AGS Company Automotive Solutions v. U.S. Customs and Border Protection*, Consul. Court No. 25-255, this Court recognized that plaintiffs "are not required to file a protest in cases involving constitutional challenges to duties" and concluded that "this court has the authority to order reliquidation… under 28 U.S.C. § 1581(i)." slip op. 25-154 at 7-8 (internal citations omitted).

56. Moreover, in *AGS*, this Court cites to Defendants' assertion that they "will not oppose or object to the [c]ourt's authority to order reliquidation" and that "[s]uch reliquidation would result in a refund of all duties determined to be unlawfully assessed, with interest." This Court held that

- 10 -

Defendants would be judicially estopped from taking a position inconsistent with this statement, concluding that "the Government has taken the 'unequivocal position' that 'liquidation will not affect the availability of refunds after a final decision' in V.O.S." *See AGS Company Automotive Solutions v. U.S. Customs and Border Protection, et al.* Consol. Court No. 25-00255, slip op. 25-154 (December 15, 2025).

## II.    IEEPA Does Not Authorize Tariffs

57. The Challenged Executive Orders cite IEEPA, 50 U.S.C. § 1701 *et seq.*, the National Emergencies Act, 50 U.S.C. § 1601 *et seq.*, section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for their authority to impose tariffs.

58. None of these statutes authorizes the President to impose tariffs. Further, it is IEEPA alone that the President and CBP lean on to impose the IEEPA Tariffs and collect the challenged IEEPA Duties. The Supreme Court has now expressly held that IEEPA does not authorize the tariffs that the Challenged Executive Orders seek to impose.

59. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections* and permanently enjoined the government from enforcing the IEEPA Duties at issue in that case. That decision was appealed to the Court of Appeals for the Federal Circuit.

60. The Federal Circuit stayed this Court's decision and injunction and ordered an expedited briefing schedule and hearing.

61. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025), *cert. granted*, No. 25-250, 2025 WL 2601020 (U.S. Sept. 9, 2025).

62. In a separate lawsuit filed by a separate group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *See Learning Res., Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL 2601021 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the United States Supreme Court granted

certiorari in both *V.O.S. Selections* and *Learning Resources*. The cases were consolidated, with argument held on November 5, 2025.

63. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources*, slip op. at 20.[8]

**III.    Plaintiff Has Paid IEEPA Duties.**

64. As of the date of this Complaint, Plaintiff has paid estimated IEEPA Duties imposed by the Challenged Executive Orders that were found unlawful by this Court, the Federal Circuit, and the Supreme Court.

65. Plaintiff's imports subject to IEEPA Duties entered the United States from foreign countries, under new HTSUS subheadings enacted to implement the IEEPA Duties.

66. Plaintiff has paid estimated IEEPA Duties on a continuous basis, including after this Court, the Federal Circuit, and the Supreme Court, ruled that these tariffs issued pursuant to IEEPA are unlawful.

67. The entries for which Plaintiff has paid estimated IEEPA Duties are scheduled to be finalized through the liquidation process and will liquidate or be subject to final liquidation in the near future.

68. Based on Plaintiff's knowledge and belief, CBP has advised importers that it will not be extending liquidation for entries subject to IEEPA Duties.

**STATEMENT OF CLAIMS**

**COUNT 1**

**THE CHALLENGED EXECUTIVE ORDERS ARE *ULTRA VIRES* UNDER *V.O.S. SELECTIONS***

69. Plaintiff incorporates paragraphs 1-68 above by reference.

70. In *Learning Resources,* the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this Court's ruling and the Federal Circuit's affirmance of this

---

[8] Although the *Learning Resources* case itself was vacated for lack of jurisdiction, this case cites to *Learning Resources* as that was the lead case at the Supreme Court for purposes of the case caption.

Court's opinion in *V.O.S. Selections v. Donald J. Trump*, 772 F. Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025), holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq., when he imposed tariffs on imported goods.

71. The Supreme Court affirmed the Federal Circuit and this Court's decision, holding that Congress did not clearly delegate to the President the authority to impose the challenged IEEPA Duties. *See Learning Resources,* slip op. at 16 ("Our task today is to decide only whether the power to 'regulate… importation,' as granted to the President in IEEPA, embraces the power to impose tariffs. It does not.").

72. The Challenged Executive Orders purport to impose tariffs and modify the HTSUS solely pursuant to IEEPA. For the reasons set forth by the Supreme Court, the Federal Circuit, and this Court, the Challenged Executive Orders exceed the President's statutory authority and are therefore unlawful, *void ab initio*, and without effect as applied to Plaintiff.

73. In its motion to the Federal Circuit in *V.O.S. Selections* to stay the CIT's judgment, CBP confirmed that "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't Mot. Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed Cir. 2025).

74. This Court is bound by the *Learning Resources* decision and as a result of that decision,  Plaintiff respectfully requests that this Court lift the stay in Administrative Order 25-02 and order CBP to refund all IEEPA Duties collected from Plaintiff, with interest as provided by law, regardless of the liquidation status of the entry.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a) lift Administrative Order 25-002 staying all related cases involving plaintiffs who have paid IEEPA Duties;

b) order CBP to liquidate all unliquidated entries subject to IEEPA Duties without IEEPA Duties;

c)   order CBP to reliquidate any of Plaintiff's liquidated entries for which Plaintiff paid IEEPA

Duties;

d)   order the United States to refund to Plaintiff all funds paid pursuant to the Challenged Executive

Orders and the IEEPA Duties collected on those entries, with interest as provided by law;

e)   award Plaintiff its reasonable costs, including attorneys' fees, incurred in bringing this action;

and

f)   grant such further relief as this Court deems proper.

Respectfully submitted,

Dated:     March 13, 2026          /s/ Robert A. Shapiro
                                   Robert A. Shapiro
                                   THOMPSON COBURN LLP
                                   1909 K Street, NW
                                   Suite 600
                                   Washington, DC  20006
                                   Tel: (202) 585-6926
                                   rshapiro@thompsoncoburn.com

                                   *Counsel for Plaintiff*

- 14 -